Félix Banuchi, Plaintiff and Appellant, *v.* Sistema de Riego de Isabela, Defendant and Appellee.

No. 7109.   Argued December 10, 1936.—Decided November 30, 1937.

Juan B. Soto, Juan F. Soto and Enrique Igaravídez for appellant; Hon. B. Fernández García, Attorney General, and T. Torres Pérez, Assistant Attorney General for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

Félix Banuchi brought a suit for damages against the entity known as "Sistema de Riego de Isabela," which is an irrigation system for a limited area in the northwestern part of this island. Banuchi primarily alleged that defendant agreed to furnish water to certain parcels of his land, known in the books of the defendant as No. 2–A and 12, and to include them in a so-called temporary irrigation district. Most important among the terms and conditions of the above alleged agreement were substantially the following:

(a) Both parcels were to be included in the temporary irrigation district and were to receive water at a certain rate for a limited number of consecutive days within each fortnight, to commence in December, 1928, and January 1929, respectively.

(b) The defendant likewise agreed to include the parcels in the temporary district as long as it existed, and that if for any reason one or both of the parcels were excluded from said district, such amount of water would be supplied to the land as should be necessary for its irrigation until the collection of the crop standing at the time the exclusion took place.

(c) In consideration thereof the plaintiff agreed, that upon the expiration of the first year of such service, he would begin to pay the premiums called for under the terms of Act No. 63 of July 19, 1919 (Laws 1919, p. 348) as amended.

The plaintiff further alleged that on the 26th of June, 1929, and approximately 6 months after it had been begun, the irrigation service was abruptly and intentionally suspended and his land deprived of the benefits of the water theretofore supplied, reducing the net product of the sugar cane then standing by $7,040.25. Banuchi also averred that because of the above suspension of irrigation facilities he was forced to sell the land, on March 6, 1930, to the Central Cambalache for $6,000 less than he would have received for the same land if it had still enjoyed the benefits of the defendant's system. He therefore claimed damages in the total amount of $13,040.25.

The defendant answered denying the above allegations and especially denied the existence of any written or oral agreement to supply plaintiff's lands with water or to include them in the temporary irrigation district. It affirmatively alleged that everything done in connection with the irrigation service to the plaintiff's parcels was done exclusively in compliance with and pursuant to the provisions of Sections 11, 33 and 34 of Act No. 63, supra. It also alleged that the suspension of the service took place in May and not in June, 1929; that in April, 1929, it notified the plaintiff that the amount of water to be supplied him in the future was uncertain because of difficulties encountered in taking the water to his lands; that 1929 was the first year in which the service operated in full and many difficulties arose; that 1929 was a very dry year, a fact which forced the defendant to reduce the water supply of others by 50 per cent; that the suspension of the service was effected because of events not within the control of the defendant and because of the high amount of water loss involved in making delivery to plaintiff; that plaintiff could never have received in value, from the benefit of the system, the amount that he claimed as lost because the system never enhances the return of the soil to that extent in the initial year of its use, a fact borne out by the clamor of landowners for the reduction of pre-

miums; that the amount of $6,000 claimed as lost in the sale of the land is no such loss because the plaintiff sold the land at a profiit of $140.00 per acre, and furthermore because the increased value of land within the Irrigation District is not the result of the owner's efforts until he has contributed with a certain proportion of the cost of the system through payment of premiums. As new matter, and in defense, the defendant averred that the suspension of the irrigation service could and should have been reviewed under Section 34 of Act No. 63, of 1919.

The lower court substantially found that defendant had notified plaintiff, sometime in the latter part of 1928, that the two parcels in question had been included in the temporary irrigation district created by Act No. 63 of 1919, supra; that, from specified dates, they would be served with, water for irrigation purposes; that plaintiff, Banuchi, on the basis of said notice proceeded to prepare his land for the cultivation of sugar cane and actually planted some 34 cuerdas or approximately one-half of its total area; that water was supplied for 4 or 5 months and then suspended because of the great loss incurred by reason of filtrations through the walls of the canal which carried the water to the plaintiff's land; that these filtrations were principally the result of negligence on the part of the defendant's engineers and employees and should have been avoided or corrected before notifying the plaintiff that his property would enjoy irrigation privileges. The liability of the defendant was founded by the trial court on a quasi-contractual obligation arising from its offer to supply water and the detriment incurred by plaintiff in reliance thereof. Said the lower court:

"It has been proved beyond a doubt, that the plaintiff, on account of the notice from the defendant *to the effect that beginning on December 16, 1928, and January 9, 1929, (dates on which water was to be supplied) began to prepare his land, planted cane and incurred in expenses, whence sprung his right to have that water supplied and the obligation upon the defendant to supply it.*"

The court *a quo* found that Banuchi should have initially exercised the right of review granted him under Section 34 of the Act (No. 63 of 1919), and that he should be limited in his damages to those which would have been suffered had he opportunely availed himself of that remedy. The court, however, decided that the evidence before it as to damages covered too vast a field, and hence dismissed the complaint, without prejudicing the plaintiff's right to bring another action and introduce evidence to support it only as to those damages which the court deemed recoverable.

The appellee maintains that the failure to make use of the remedy provided by the special law defeats the plaintiff's right to any damages he may have suffered. Appellant, in his assignment of errors, which number four, attacks the findings of the lower court to the effect that (1) plaintiff should have exercised, the remedy provided for by Section 34 of Act 63 supra, as amended, (2) that plaintiff only can recover those damages which he would have suffered if he had made use of that right, (3) that plaintiff must bring another action and limit his proof to the damages provided for in the preceding error, and (4) that the complaint should be dismissed.

█ The pertinent portion of Section 34, supra, reads as follows:

"*Provided, however*, That nothing in this Act shall prevent the proper distribution of water by rotation among the various tracts of land through any canal or lateral, and that should any owner or lessee of such land believe himself aggrieved by the refusal of the Commissioner of the Interior of Puerto Rico to furnish water, such owner or lessee may bring action in the district court of the district in which the said lands are situated to compel the Commissioner or the Interior of Puerto Rico to turn the water onto the land; . . ."

We are of the opinion that the remedy of specific performance provided by the above section is not exclusive and that plaintiff may, if the finding of the trial court as to his cause

of action is correct, bring an action for damages. Furthermore, we do not agree that his damages should in any way be limited because of the mere failure to exercise the special proceeding.

On the matter of a cause of action we are inclined to agree with the lower court. Considering the Act in question (No. 63 of 1919), and analyzing the situation which arose as a result of the defendant's offer to supply water for irrigation, a quasi-contractual duty devolved upon the defendant to make good his offer until the harvesting of the crop planted in reliance thereof. We have no adequate basis on which to challenge the finding of the lower court that charged the defendant with negligence in the preparation and construction of the canal which directed the water to the plaintiff's land.

Under these circumstances all that remains for us to decide is the damages to be awarded. From the evidence it appears that the cane under cultivation was one planted late in the year (*caña de gran cultura*) and was accordingly a crop of highly cultivated cane. It likewise appears from the record that although the water was suspended in April or May, 1929, (June, according to the plaintiff) Banuchi did not file any formal proceeding, legal or otherwise, until February, 1930, when he filed a claim for damages with the Commissioner of the Interior. The question to determine, therefore, is the basis on which to calculate the actual damages. We are of the opinion that the plaintiff is entitled to the difference between the net value of the cane as harvested, for the year 1929–30, and the estimated net value of that cane had it been irrigated from May or June until harvested. All other damages should be disregarded as entirely too remote.

The following evidence exists in the record which permits this Court to make its own award and thus obviate any further delay:

Ramón Añeses, Mayor of the town of Isabela in 1929 and member of the Irrigation Commission; Ramón Banuchi, Sec-

retary of the Irrigation Commission in 1929; and Félix Banuchi, the plaintiff, all with an extensive experience in the production of sugar cane, testified that the difference in tonnage yield from the plaintiff's cane due to failure of irrigation in 1929 was about 28 tons per cuerda. The plaintiff testified that he was paid $5.44 per ton of cane by the Central Cambalache. The evidence is clear that he only had 33 cuerdas under cultivation and subject to irrigation, thus placing the estimated reduction in the yield at 924 tons, and its gross value at $5,026.56. From these calculations must be deducted, or taken into account, the expenses which would have been incurred by the plaintiff in the harvesting, transportation, and perhaps to a certain extent, cultivation of the tonnage which he failed to obtain. He actually did not have to lay out any money for such purposes.

We are satisfied from a reading of the record that Banuchi lost at least $1,000, but we have no way of determining, from lack of data, any considerable sum in excess of this amount.

The judgment of the lower court is therefore reversed and another entered in favor of the plaintiff in the sum of $1,000.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.